UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES CAIRNEY, on behalf of himself
and on behalf of all others
similarly situated,

    Plaintiff,

vs.                                    CASE NUMBER:

THE FLORIDA AQUARIUM, INC.,

    Defendant.
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, JAMES CAIRNEY, (hereinafter "Plaintiff" or "Mr. Cairney"), a Florida resident, by and through the undersigned counsel, and on behalf of himself and on behalf of all others similarly situated, hereby sues Defendant, THE FLORIDA AQUARIUM, INC. (hereinafter "Defendant" or "AQUARIUM"), and alleges:

**JURISDICTION AND VENUE**

1. This is an action brought pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. section 201, et. seq. ("FLSA"), and the Florida Private Whistleblower's Act, Section 448.102 (1), Florida Statutes.

2. This Complaint is filed as a collective action under 29 U.S.C. § 216(b).

3. Defendant has failed to pay Plaintiff, and other similarly situated employees, wages which were earned through work for Defendant.

4. Pursuant to the FLSA, and other applicable law, Plaintiff seeks unpaid wages, liquidated damages, and attorneys' fees and costs owed to Plaintiff and similarly situated

employees.

5. This Court has jurisdiction pursuant to 28 U.S.C. §1331 regarding Plaintiff's FLSA claim.

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1367(a) regarding Plaintiff's claim under the Florida Private Whistleblower's Act, Section 448.102 (1), Florida Statutes.

7. Venue is proper in this judicial district under 28 U.S.C. §1391 because all the events giving rise to these claims occurred in Hillsborough County, Florida, which lies within the Middle District.

## PARTIES

8. Plaintiff, JAMES CAIRNEY, resides in Pinellas County. Mr. Cairney was an employee of Defendant. Specifically, Mr. Cairney worked as a Captain and Divemaster.

9. The putative class of similarly situated employees consists of "all current and former similarly-situated employees of Defendant who worked more than forty hours during any single workweek and were not compensated for all overtime hours worked within the three years prior to the commencement of this action."

10. Defendant, AQUARIUM, is a Florida not for profit corporation with its Principal Address located at 701 Channelside Drive, Tampa, Florida 33602.

11. At all times material, Defendant, AQUARIUM, was an "employer" subject to the requirements of the FLSA and other applicable law.

12. At all times material, Defendant was an enterprise engaged in interstate commerce as defined by the FLSA and other applicable law in that Defendant had employees engaged in interstate commerce or had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce.

13. At all times material, Defendant was an enterprise engaged in commerce as defined by the FLSA and other applicable law in that they had an annual gross volume of sales made or business done that is greater than or equal to than $500,000.00 (exclusive of excise taxes at the retail level that are separately stated).

## GENERAL ALLEGATIONS RELATING TO THE FLSA

14. Mr. Cairney worked for The Florida Aquarium from March 17, 2017 to October 23, 2019.

15. Mr. Cairney was to be paid $19.05 per hour for a forty-hour work week.

16. During his employment, Mr. Cairney worked Tuesday through Saturday from 7:30 a.m. until 5:30 p.m.

17. While employed at The Florida Aquarium, Mr. Cairney worked both as a Dive Master and a Boat Captain.

18. A typical day for Mr. Cairney consisted of arriving at the Aquarium at 7:30, checking that all of the supplies needed for the dive shows and boat tours were readily available, attending a morning meeting to discuss the scheduled shows and tours, performing a dive show and answering questions for Aquarium visitors in the morning, assisting Aquarium visitors onto the Aquarium's "T-boat" for a tour out into Tampa Bay, returning the passengers to the Aquarium, and securing the boat and supplies that were used during the day before ending his workday around 5:30 p.m.

19. Despite working a fifty-hour week Mr. Cairney was only paid for forty hours.

20. Mr. Cairney discussed the difference in hours worked in comparison to the hours that he was paid with his supervisor, Alison Hough, on numerous occasions and was told that it was The Florida Aquarium's policy to subtract one hour per day for lunch. Additionally, even

though Mr. Cairney arrived to work and began working daily at 7:30 he was not allowed to clock in until 8:00 a.m.

21. Defendant knew, by virtue of its time-keeping system, the exact amount of hours that Plaintiff and the other similarly-situated employees worked, Defendant altered its time-keeping system to reflect an inaccurate summary of the amount of hours that Plaintiff and other similarly-situated employees actually worked in an attempt to evade paying them all of the compensation that Defendant owes to them.

22. Defendant has willfully engaged in a pattern of violating the FLSA, 29 U.S.C. § 201 et seq., as described in the Complaint by failing to pay employees proper overtime compensation for all hours worked more than forty in a workweek.

23. As alleged herein, Plaintiff and other similarly situated employees are victims of Defendant's widespread, repeated, and systematic illegal policies and practices that have resulted in violations of their rights under the FLSA.

24. Defendant's actions have caused significant damage to Plaintiff and Defendant's other similarly situated employees.

## ALLEGATIONS RELATING TO
## FLORIDA PRIVATE WHISTLEBLOWER ACT

25. On October 11, 2019, Mr. Cairney prepared the T-boat for the afternoon tour.

26. While out on the tour it became necessary to shut down one of the T-boat's engines to avoid a fire due to it overheating. As a result of shutting down the engine, it became necessary for Mr. Cairney to stop the tour and limp back in with the vessel to assure the safety of the patrons on board.

27. During this highly stressful emergency on the water, it became apparent to Mr. Cairney that the Aquarium crew was severely deficient in basic coast guard training, including

the use of a fire extinguisher. As such, the safety of the vessel, the crew, and the patrons was placed solely on Mr. Cairney who had to both navigate a distressed T-boat back to port and manage the possibility of a fire on board.

28. When Mr. Cairney returned the T-boat to the port safely he made a discovery that the overheating alarms had been disabled by the Aquarium's Senior Captain of Marine Operations, Douglas Pace.

29. Mr. Cairney complained to Ms. Hough and the Aquarium's Occupational Health and Safety Manager, Bailey Watson, that Mr. Pace created a dangerous condition by disabling the T-boat's alarms and that the Aquarium itself endangered all the passengers by manning the T-boat with an untrained, inexperienced crew. Furthermore, Mr. Cairney made it clear to Ms. Hough and Ms. Watson that he felt both of his safety concerns were in strict violation of 46 CFR Subpart E - Preparations for Emergencies.

30. On October 19, 2019, Aquarium's Director of Marine Operations, Tim Stripling, suspended Mr. Cairney from boat related activities as a result of an alleged investigation into the engine damage that the T-boat sustained on the October 11, 2019 outing and limited Mr. Cairney to performing only dive related tasks at the Aquarium.

31. Mr. Cairney told Mr. Stripling that that Mr. Pace created a dangerous condition by disabling the T-boats alarms and that the Aquarium itself endangered all the passengers by manning the T-boat with an untrained, inexperienced crew. Furthermore, Mr. Cairney made it clear to Mr. Stripling, just as he did to Ms. Hough and Ms. Watson, that he felt both of his safety concerns were in strict violation of 46 CFR Subpart E - Preparations for Emergencies.

32. Mr. Stripling ignored Mr. Cairney's complaints and Mr. Cairney's suspension eventually led to his termination on October 23, 2019.

33. Prior to his termination, Mr. Cairney had only been counseled for two minor incidents relating to insignificant boat damage from a rough docking and a fuel miscalculation that resulted in over fueling the T-boat for its daily run; neither of these counselings led to any type of final warning or indication of a possible upcoming termination.

34. The truth is that Mr. Cairney was terminated after he complained to his supervisor, Ms. Hough, about The Florida Aquarium's violation of the Fair Labor Standards Act and to Mr. Stripling about violations of Federal Coast Guard Regulations.

35. Mr. Cairney has suffered damages because of retaliation in violation of the Florida Private Whistle-blowers Act.

36. The Florida Aquarium is liable for the loss of income Mr. Cairney sustained because of its unlawful retaliation against him under the FPWA when it terminated his employment in retaliation for his objections to ongoing Federal Coast Guard Regulation violations and Defendant's violation of the Fair Labor Standards Act.

## COLLECTIVE ACTION ALLEGATIONS

37. Plaintiff brings this case as an "opt-in" collective action on behalf of similarly situated employees of Defendant (the "Class") pursuant to 29 U.S.C. § 216(b).

38. The Class is defined as all current and former similarly-situated employees of Defendant who worked more than forty hours during any single workweek and were not compensated for all overtime hours worked within the three years prior to the commencement of this action.

39. The class consists of all employees who worked at Defendant's facility and whom Defendant failed to compensate for all overtime hours worked in accordance with the FLSA because of Defendant's payroll and timekeeping practices.

40. Therefore, notice is properly sent to: "all current and former similarly-situated employees of Defendant who worked more than forty hours during any single workweek and were not compensated for all overtime hours worked within the three years prior to the commencement of this action."

41. The total number and identities of the Class members can be easily determined from the records that Defendants keep in the normal course of business and the Class can quickly and easily be notified of the pendency of this action.

42. Plaintiff is like the proposed Class because they were all subjected to the same unlawful timekeeping practices by Defendants and were not compensated for all overtime hours worked.

43. Plaintiff and the Class have been unlawfully denied full payment of their overtime wages as mandated by the FLSA.

44. Plaintiff's experience with Defendant's payroll practices is typical of the experiences of the Class.

45. Defendant's failure to pay all overtime wages is a result of Defendant's payroll policies and is common to the Class.

46. Defendant's practice of making unlawful deductions from the wages that Plaintiff and the proposed Class rightfully earned is common to the Class.

47. Specific job titles or job duties of the Class do not prevent collective treatment.

48. Although the issues of damages can be individual in character, there remains a common nucleus of operative facts concerning Defendant's liability under the FLSA in this case.

## COUNT I
## FLSA OVERTIME VIOLATIONS

49. Plaintiff realleges and readopts the allegations of Paragraphs 1 through 24 and 37

through 48 of this Complaint, as fully set forth herein.

50. At all relevant times, Plaintiff and others similarly situated were employees within the meaning of 29 U.S.C. § 203(e)(1).

51. Plaintiff brings this action on behalf of himself and all other similarly situated employees in accordance with 29 U.S.C. § 216(b). Plaintiff anticipates that as this case proceeds, other individuals will sign consent forms and join this collective action as plaintiffs.

52. During the statutory period, Plaintiff and the Class worked overtime hours while employed by Defendant and they were not properly compensated for all these hours under the FLSA.

53. Defendant knowingly failed to compensate Plaintiff and the Class for all of the overtime hours that Plaintiff and the Class worked by altering its employees time records in a manner that failed to pay Plaintiff and the proposed Class for all overtime hours worked.

54. The Members of the Class are similarly situated because they were all employed by Defendant and were required to clock in and out; were compensated in the same manner; and were subject to Defendant's common policy and practice of failing to pay its employees for all of the overtime hours that they worked in accordance with the FLSA.

55. This reckless practice violates the provisions of the FLSA, specifically 29 U.S.C. § 207(a)(1). As a result, Plaintiff and the Members of the Class are individually entitled to an amount equal to their unpaid overtime wages as liquidated damages.

56. All of Defendant's conduct, as alleged and described above, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

57. Plaintiff has incurred Attorney's fees and cost because of bringing this action.

58. As a result of the foregoing, Plaintiff and the Class have suffered damages and

will continue to suffer damages in an amount to be determined at trial.

**WHEREFORE**, Plaintiff and all similarly situated employees who join this collective action demand:

a) Designation of this action as a collective action on behalf of the Plaintiff and the prospective Class that he seeks to represent, in accordance with the FLSA;

b) Prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA putative class, apprising them of the pendency of this action and permitting them to assert timely FLSA claims in this action by filing individual consent to sue forms pursuant to 29 U.S.C. § 216(b);

c) Equitable tolling of the statute of limitations from the date of the filing of this complaint until the expiration of the deadline for filing consent to sue forms under 29 U.S.C. § 216(b);

d) Leave to add additional plaintiffs by motion, the filing of written consent forms, or any other method approved by this Court;

e) Judgment against Defendant for an amount equal to the unpaid overtime wages of Plaintiff and all opt-in Members of the Class, at the applicable overtime rate;

f) A declaratory judgment stating that the practices complained of herein are unlawful under the FLSA;

g) Judgment against Defendant for an amount equal to the unpaid back wages of Plaintiff and all opt-in Members of the Class at the applicable overtime rate, as liquidated damages;

h) Judgment against Defendant stating that their violations of the FLSA were willful;

i) To the extent liquidated damages are not awarded, an award of prejudgment

    interest;

 j) All costs and attorney's fees incurred in prosecuting these claims; and

 k) For such further relief as this Court deems just and equitable.

## COUNT II
## RETALIATION IN VIOLATION OF THE FLSA

 59. Plaintiff realleges and readopts the allegations of Paragraphs 1 through 24 of this Complaint, as fully set forth herein.

 60. At all relevant times, Plaintiff was an employee within the meaning of 29 U.S.C. § 203(e)(1).

 61. Plaintiff brings this action in accordance with 29 U.S.C. § 215(a)(3).

 62. During the statutory period, Plaintiff worked overtime hours while employed by Defendant and was not properly compensated for all these hours under the FLSA.

 63. Mr. Cairney discussed the difference in hours worked in comparison to the hours that he was paid with his supervisor, Alison Hough, on numerous occasions and was told that it was The Florida Aquarium's policy to subtract one hour per day for lunch. Additionally, even though Mr. Cairney arrived to work and began working daily at 7:30 he was not allowed to clock in until 8:00 a.m.

 64. On October 23, 2019, Defendant terminated Plaintiff's employment.

 65. The motivating factor for Defendant's actions was Plaintiff asserting a claim for overtime wages pursuant to the Fair Labor Standards Act.

 66. Defendants' actions as discussed above are in direct violation of 29 U.S.C. § 215(a)(3) because the motivating factor for said activity was Plaintiff's demand for his legally mandated wages and, as a result, Plaintiff has been damaged.

 67. Plaintiff has incurred Attorney's fees and cost because of bringing this action.

68. As a result of the foregoing, Plaintiff will continue to suffer damages in an amount to be determined at trial.

**WHEREFORE**, Plaintiff requests judgment against the defendant for attorney's fees, costs, promotion and injunctive relief prohibiting the defendant from retaliating in the manner described above, emotional distress and humiliation and pain and suffering, and all other damages recoverable by law under 29 U.S.C. 216(B).

**COUNT III**
**VIOLATION OF THE FLORIDA PRIVATE WHISTLE-BLOWER'S ACT**
**§ 448.102 – Florida Statutes**

69. Plaintiff realleges and readopts the allegations of Paragraphs 1 through 18 and 25 through 36 of this Complaint, as fully set forth herein.

70. Plaintiff was employed by Defendant, an employer with more than ten employees that was conducting business in the state of Florida and is therefore subject to the Florida Private Whistle-blower Act.

71. Mr. Cairney complained about The Florida Aquarium's violation of the Fair Labor Standards Act to his Supervisor, Alison Hough.

72. Mr. Cairney complained to Alison Hough, Bailey Watson, and Tim Stripling, that the Aquarium's Senior Captain of Marine Operations, Douglas Pace, created a dangerous condition by disabling the T-boats alarms and that the Aquarium itself endangered all the passengers by manning the T-boat with an untrained, inexperienced crew. Furthermore, Mr. Cairney made it clear to Ms. Hough, Ms. Watson, and Mr. Stripling that he felt both of his safety concerns were in strict violation of 46 CFR Subpart E - Preparations for Emergencies.

73. Defendant terminated Mr. Cairney because of his objections to the Florida Aquarium's violation of the Fair Labor Standards Act and about significant safety concerns in

violation of Federal Coast Guard Regulations. Defendant's stated reasoning for terminating Mr. Cairney – three incidents causing damage to the boat in less than one year – is not only pretextual but also shows that he was terminated for objecting to Mr. Pace creating a dangerous condition by disabling the T-boat's alarms and that the Aquarium endangering its passengers by manning its T-boat with an untrained, inexperienced crew.

74. Defendant terminated Mr. Cairney in retaliation for objecting to Defendant's violations of the Fair Labor Standards Act and for objecting to Defendant's significant violations of Federal Coast Guard Regulations. As such, Defendant directly violated § 448.102 (3), Florida Statutes.

75. As a direct and proximate cause of Defendant's termination of his employment, Plaintiff has suffered and will continue to suffer loss of income, mental anguish, emotional distress, humiliation, financial damages, and loss of reputation.

76. Plaintiff has incurred attorney's fees and costs because of Defendant's violation of the Florida Private Whistleblower's Act.

**WHEREFORE**, Plaintiff, JAMES CAIRNEY, respectfully demands judgment against the Defendant, THE FLORIDA AQUARIUM, INC., and requests this Court enter an Order making JAMES CAIRNEY whole by awarding him the following relief:

a) Declaration that Defendant violated the Florida Private Whistleblower's Act;

b) An injunction prohibiting Defendant from further violations of the Florida Private Whistleblower Act;

c) Reinstatement to his position or a comparable amount of front pay;

d) Compensatory damages for mental anguish;

e)  An award to Plaintiff of back pay, including interest, reflecting his lost wages and benefits, which resulted from Defendants' violations of the Florida Private Whistleblower Act; and

f)  Any other relief this Honorable Court deems appropriate.

## DEMAND FOR TRIAL BY JURY

Plaintiff respectfully requests a trial by jury.

Dated this 16th day of September 2020.

                                                  */s/ Jason W. Imler, Esq.*
                                                Jason W. Imler
Florida Bar No. 1004422
Gary L. Printy, Jr
Florida Bar No. 41956
PRINTY & PRINTY, P.A.
3411 W. Fletcher Ave., Suite A
Tampa, Florida 33618
Telephone (813) 434-0649
FAX (813) 423-6543
garyjr@printylawfirm.com
jason.imler@printylawfirm.com
toni.harrold@printylawfirm.com
wanda.butler@printylawfirm.com